**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTOPHER EBERT, | : | Civil No. 3:21-CV-00980 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GENPACT LIMITED, | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 8.) This action was brought by Plaintiff Christopher Ebert ("Ebert") to recover damages for Defendant's alleged wrongful termination of Ebert's employment. (Doc. 1-2.) Defendant, Genpact Limited[1] ("Genpact"), has moved to dismiss the complaint, alleging that Ebert was an at-will employee under Pennsylvania law, that he has not otherwise alleged facts that would indicate that a public policy was violated, and that employment discipline and ultimate employment termination are insufficient grounds to establish an intentional infliction of emotional distress claim. (Doc. 9.) Because the court finds that Genpact's handbook clearly established an at-will employment relationship; Ebert has alleged only personal adverse consequences, rather than a

---

[1] Defendant asserts that Ebert "incorrectly sued Genpact Limited, and not [his] former employer, Genpact LLC." (Doc. 9, p. 1 n.1.) However, the court refers to Genpact Limited throughout this order since Genpact Limited remains the named Defendant in this case.

broader concern for society as required by the public policy exception to the general presumption in favor of at-will employment; and because the employment discipline and termination described in the complaint do not amount to intentional infliction of emotional distress, the court will grant the motion to dismiss.  (Doc. 8.)

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

According to the complaint, Ebert was hired by Genpact on August 7, 2017. (Doc. 1-2, ¶ 3.)  Ebert alleges that throughout his time working for Genpact, he only received positive reviews and feedback until he took a company survey that purported to be anonymous regarding his experiences at Genpact.  (*Id.* ¶¶ 9, 18–19, 22–23.)  Ebert asserts that after providing his responses to this survey, he was placed on a "Performance Improvement Plan," given unsatisfactory job performance evaluations, and ultimately faced employment termination without good cause on January 31, 2020.  (*Id.* ¶¶ 6, 23.)

On the basis of these facts, Ebert filed a three-count complaint on December 30, 2020 alleging wrongful termination/breach of contract, wrongful termination/retaliation, and intentional infliction of emotional distress against Genpact.  (*Id.*)  This case was removed to federal court from the Court of Common Pleas of Luzerne County on June 1, 2021.  (Doc. 1.)  On June 6, 2021, Ebert filed a motion to remand.  (Doc. 5.)  Genpact filed the instant motion to dismiss,

accompanied by a supporting brief, on June 14, 2021.  (Docs. 8, 9.)  The court stayed briefing of the motion to dismiss pending resolution of the motion to remand.  (Doc. 12.)  The court denied the motion to remand on July 23, 2021, and set a new briefing schedule for the motion to dismiss.  (Doc. 15.)  In accordance with this schedule, Ebert filed a brief in opposition on August 6, 2021.  (Doc. 18.) Genpact timely filed a reply brief.[2]  (Doc. 19.)  Accordingly, the motion is ripe for disposition.

## JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the parties have complete diversity and the amount in controversy exceeds $75,000.  Further, venue is appropriate because the action detailed in the complaint occurred in the Middle District of Pennsylvania.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the

---

[2] The court notes that attached to Genpact's reply brief are additional exhibits that it would like the court to consider in ruling on the motion to dismiss.  The court disregards these exhibits for two reasons: first, because they were not attached to the brief in support of the motion to dismiss and Ebert has not had a chance to respond to them; and second, because Ebert does not rely on these documents in the complaint, and they are therefore outside the scope of the pleadings and the universe of documents that the court may consider when ruling on a motion to dismiss.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## DISCUSSION

Genpact argues that the complaint should be dismissed because Pennsylvania is an at-will employment state, absent a statute or contract to the contrary, and therefore a claim for wrongful termination is unavailable to Ebert. (Doc. 9, p. 5.)[3] In addition, Genpact asserts that its employee handbook, which Ebert claims formed a contractual relationship with Genpact and which Genpact attached to its brief in support of the instant motion, unequivocally indicates that Ebert's employment was at-will. (*Id.* at 6–9.) Genpact also argues that Ebert has not established an exception to the general rule that he was an at-will employee,

---

[3] For ease of reference, the court utilizes the page number from the CM/ECF header.

4

and therefore, his claims for wrongful termination based on breach of contract and for retaliatory discharge should be dismissed.  (*Id.* at 9–10.)  Finally, Genpact asserts that a claim for intentional infliction of emotional distress is unavailable to Ebert as a matter of law because such claims are generally unavailable in the employment context absent extreme circumstances which do not exist in this case. (*Id.* at 11–12.)

Ebert claims that the court cannot consider the documents attached to Genpact's brief because they are "unverified," were not attached to his complaint, and because Ebert "never saw the Exhibits attached to the Defendant's Brief, nor were they given to him at the time of his hire, or thereafter."[4]  (Doc. 18, p. 7.)  The remainder of Ebert's brief restates facts and legal conclusions from his complaint, which do little to respond substantively to Genpact's arguments.  In the alternative, Ebert requests that the court grant leave to file an amended complaint.  (*Id.* at 15.)

_____

[4] Ebert also argues that the court should treat Genpact's motion to dismiss as a motion for summary judgment which has been prematurely filed.  (Doc. 18, pp. 8–9.)  Because Genpact is permitted to offer documents for the court's consideration that are relied upon in the complaint, the court will decline Ebert's invitation to construe Genpact's motion as seeking summary judgment.  *See Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020).

In addition, although courts generally consider "only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when deciding a motion to dismiss, *Pension Ben. Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), courts "may also consider evidence 'integral to or explicitly relied upon'" in the complaint.  *Doe*, 961 F.3d at 208.  Here, Genpact's employee handbook is integral to Ebert's claims.  Indeed, Ebert relies on the handbook for his argument that an implied contract was formed for his employment.  The court will therefore consider the employee handbook in deciding Genpact's motion to dismiss.

## A. Ebert's Breach of Contract and Retaliation Claims Will be Dismissed Without Prejudice.

Under Pennsylvania law,[5] the general rule is that "absent a statutory or contractual provision to the contrary, either party may terminate an employment relationship for any or no reason." *Weaver v. Harpster*, 975 A.2d 555, 562 (Pa. 2009) (citing *Geary v. United States Steel Corp.*, 319 A.2d 174 (Pa. 1974); *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283 (Pa. 2000) (noting that Pennsylvania courts have recognized for over a century that an employer may terminate an employee for any reason absent a contractual provision to the contrary)). In other words, employment in Pennsylvania is presumed to be "at-will."

This is a strong presumption. As the Pennsylvania Superior Court has stated:

> Absent a definite contract to the contrary . . ., the reasonable expectations of the parties in the employment relations setting are that the employee will work for the employer only for so long as both desire. While an employment contract which is clearly for a term of a specific number of years would be enforceable, any language short of this definiteness is generally strictly reviewed because of the pervasive presumption that the employment is at-will.

*Martin v. Capital Cities Media, Inc.*, 511 A.2d 830, 837 (Pa. Super. Ct. 1986).

---

[5] The court applies the substantive law of Pennsylvania to this dispute since the court is exercising diversity jurisdiction in this case. *Erie R.R. Co. v. Tompkins*, 304 U.S 64, 78 (1938); *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000). In addition, the court notes that neither party objects to the application of Pennsylvania law and both parties have cited to same in their filings.

Where, as here, a plaintiff attempts to use an employee handbook as the

basis for a contractual employment relationship, courts have held that:

> A handbook is enforceable against an employer if a reasonable person
> in the employee's position would interpret its provisions as evidencing
> the employer's intent to supplant the at-will rule and be bound legally
> by its representations in the handbook.  The handbook must contain a
> clear indication that the employer intended to overcome the at-will
> presumption.  We have held that it is for the court to interpret the
> handbook to discern whether it contains evidence of the employer's
> intention to be bound legally.

*Luteran v. Loral Fairchild Corp.*, 688 A.2d 211, 214–15 (Pa. Super. Ct. 1997)

(quoting *Small v. Juniata College*, 682 A.2d 350, 353 (Pa. Super. Ct. 1996)).

In addition, courts have held that "provisions in employee handbooks which

contain disclaimers or state there is no intent to create an employment contract are

sufficient to retain the at-will presumption."  *Raines v. Haverford College*, 849 F.

Supp. 1009, 1012 (E.D. Pa. 1994) (citing *Ruzicki v. Catholic Cemeteries Ass'n*,

610 A.2d 495, 496 (Pa. Super. Ct. 1992)) (finding no employment contract to

defeat the at-will presumption where the handbook's disclaimer stated its purpose

"is not intended to give rise to any contractual obligations or to establish an

exception to the employment-at-will doctrine")); *Braun v. Wal-Mart Stores, Inc.*,

24 A.3d 875, 941 (Pa. Super. Ct. 2011) (quoting *Caucci v. Prison Health Servs.,*

*Inc.*, 153 F. Supp. 2d 605, 611 (E.D. Pa. 2001)) ("Generally, explicit disclaimers of

contract formation in an employee handbook preclude a breach of contract

claim.").  These principles are also true for implied contracts based on employee

handbooks. *See Jacques v. Akzo Int'l Salt, Inc.*, 619 A.2d 748, 753 (Pa. Super. Ct. 1993) ("An employee handbook only forms the basis of an implied contract if the employee shows that the employer affirmatively intended that it do so."); *Rutherfoord v. Presbyterian-Univ. Hosp.*, 612 A.2d 500, 504 (Pa. Super. Ct. 1992) (finding that an employee handbook containing "disclaimer" language could not form the basis for a breach of contract action since an implied contract was not formed as a matter of law); *but see DiBonaventura v. Consol. Rail Corp.*, 539 A.2d 865, 867 (Pa. Super. Ct. 1988) ("An employee handbook that explicitly indicates that discharge will be for just cause only may create an implied contract of employment.").

The at-will presumption can also be overcome by certain limited public policy exceptions. *Weaver*, 975 A.2d at 563 (quoting *Clay v. Advanced Computer Applications*, 559 A.2d 917, 918 (Pa. 1989) (noting that exceptions to the general rule are applicable in "only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy")). Specifically, the Pennsylvania Supreme Court has recognized a select few exceptions to the at-will presumption by allowing an employee to maintain a wrongful termination claim where the employee is discharged for: (1) filing an unemployment compensation claim; (2) failing to discourage a subordinate employee from seeking workers' compensation; (3) refusing to submit to a polygraph test; (4) jury

service; and (5) refusing to participate in a lobbying effort. *Weaver*, 975 A.2d at

564 (collecting cases).  In each of these cases, despite finding an exception

applicable, the Pennsylvania Supreme Court has re-emphasized the strength of the

at-will presumption and has cautioned against "unwisely interfere[ing] with 'the

legitimate interest of employers in hiring and retaining the best personnel

available.'" *Weaver*, 975 A.2d at 562 (citing *Geary*, 319 A.2d at 179).  Indeed, the

court noted that:

> In our judicial system, the power of the courts to declare
> pronouncements of public policy is sharply restricted.  *Mamlin v.*
> *Genoe* (*City of Philadelphia Police Beneficiary Ass'n*), 17 A.2d 407,
> 409 (Pa. 1941).  Rather, it is for the legislature to formulate the public
> policies of the Commonwealth.  The right of a court to declare what is
> or is not in accord with public policy exists "only when a given policy
> is so obviously for or against public health, safety, morals, or welfare
> that there is a virtual unanimity of opinion in regard to it."  *Mamlin*, 17
> A.2d at 409.  Only in the clearest of cases may a court make public
> policy the basis of its decision.  *Id.*  To determine the public policy of
> the Commonwealth, we examine the precedent within Pennsylvania,
> looking to our own Constitution, court decisions, and statutes
> promulgated by our legislature.  *McLaughlin*, 750 A.2d at 288; *Hall v.*
> *Amica Mutual Ins. Co.*, 648 A.2d 755 (Pa. 1994); *Lurie v. Republican*
> *Alliance*, 192 A.2d 367 (Pa. 1963); *Mamlin*, 17 A.2d 407.

*Weaver*, 975 A.2d at 563.

Thus, to prevail on the basis of a public policy exception, a plaintiff "must

do more than show a possible violation . . . that implicates only her own personal

interest." *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 289 (Pa.

2000).  Plaintiffs bringing wrongful termination claims have not been successful

where they have only alleged claims that essentially express concern for their own well-being, rather than "the protection of society from public harm, or the need to vindicate fundamental individual rights[.]" *Clark v. Modern Group*, 9 F.3d 321, 333 (3d Cir. 1993) ("an at-will employee's reasonable fear of adverse personal consequence if he follows his employer's directions is insufficient to make out an action for wrongful discharge in Pennsylvania").

In this case, the court finds that Ebert cannot avoid the presumption in favor of at-will employment. Initially, the court notes that the employee handbook, upon which Ebert relies to form an implied contract, explicitly states in numerous instances throughout that employees are at-will, and that Genpact reserves the right to terminate the employee's employment at any time, with or without cause or notice. (Doc. 9-1; Doc. 9-2.) In addition, the handbook indicates that "[t]his Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits of any kind for any specified period of time[.]" (Doc. 9-1, p. 3.) Moreover, the handbook states that any "agreements purporting to alter the 'at-will' nature of employment with the Company in any manner must be in writing and signed by the Chief Executive Officer or the Board of Directors of the Company." (*Id.* at 4.) Genpact has thus made its position abundantly clear that its employees fall under the at-will presumption and that it has no desire to change this status, absent specific

procedural steps.  The court finds that based on this language, no reasonable employee could conclude that they were anything other than an at-will employee unless they had been provided with a written agreement "purporting to alter the 'at-will' nature of employment with the Company . . . signed by the Chief Executive Officer or the Board of Directors of the Company." (*Id.* at 4.)

The complaint does not attempt to rebut this presumption, nor does it include an allegation that Ebert was provided with such a signed, written agreement. Moreover, Ebert's allegation in his brief that he "never saw the Exhibits attached to the Defendant's Brief, nor were they given to him at the time of his hire, or thereafter" verges on disingenuous.  (Doc. 18, p. 7.)  In his complaint, Ebert alleges that "[a]t the time of his hire by the Defendant, the Plaintiff was both orally advised of and was briefly shown various company documents which included the policies, terms, conditions and expectations of his employment, which included, *inter alia*, an employee handbook or manual." (Doc. 1-2, ¶ 4.)  Neither the complaint, nor Ebert's brief, allege that there was more than one employee handbook or manual; rather, based on the language in the complaint, it appears that there was only one handbook or manual.  (*See, e.g.*, *id.* ¶¶ 4–5, 8, 10–11 (referring to "***an*** employee handbook or manual" and "***the*** employee handbook") (emphasis added).)  Ebert cannot rely on certain portions of the handbook in his complaint to

establish an alleged implied contract while simultaneously claiming to have never seen the document and thus disregard other, dispositive portions.

Finally, the court notes that not only does the complaint fail to allege a public policy violation sufficient to rebut the at-will employment presumption, the complaint fails to allege any broader public policy concern implicated by the termination of Ebert's employment, other than his own personal consequences. Thus, the court finds that Ebert has failed to rebut the at-will employment presumption and that he cannot maintain a claim for wrongful termination or retaliation based on an employment contract that did not exist as a matter of law. Therefore, the court will grant the motion to dismiss on these grounds without prejudice to Ebert filing an amended complaint.

### B. Ebert's Intentional Infliction of Emotional Distress Claim Will be Dismissed Without Prejudice.

In order to state a claim for intentional infliction of emotional distress under Pennsylvania law, a plaintiff must show that: "(1) the conduct [of the defendant was] extreme and outrageous; (2) it [was] intentional or reckless; (3) it . . . caused emotional distress; [and] (4) that distress [was] severe." *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. Ct. 1997).  A claim for intentional infliction of emotional distress also requires "an allegation of some type of physical injury, harm, or illness related to the distress." *McCullough v. Wellspan York Hosp.*, No. 1:20-cv-979, 2021 U.S. Dist. LEXIS 23130, at *11 (M.D. Pa. Feb. 5, 2021) (citing

*Robinson v. Family Dollar, Inc.*, No. 14-3189, 2015 U.S. Dist. LEXIS 68073 (E.D.

Pa. May 27, 2015)), *report and recommendation adopted at* 2021 U.S. Dist.

LEXIS 32933 (Feb. 23, 2021).  The Restatement (Second) of Torts, which has

been adopted in Pennsylvania, instructs that:

> It has not been enough that the defendant has acted with intent which is
> tortious or even criminal, or that he has intended to inflict emotional
> distress, or even that this conduct has been characterized by "malice,"
> or a degree of aggravation that would entitle the plaintiff to punitive
> damages for another tort.

Restatement (Second) of Torts § 46, cmt. d; *Hoy*, 720 A.2d at 754.  Rather,

Pennsylvania courts have required plaintiffs to demonstrate that the defendant's

conduct was "'so extreme in nature as to go beyond all possible bounds of decency

such that it would be regarded as utterly intolerable to civilized society.'"  *Regan v.*

*Twp. of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999) (quoting *Mulgrew*

*v. Sears Roebuck & Co.*, 868 F. Supp. 98, 103 (E.D. Pa. 1994)).

Because this standard is so high, the Pennsylvania Supreme Court has noted

that "'it is extremely rare to find conduct in the employment context that will rise

to the level of outrageousness necessary to provide a basis for recovery for the tort

of intentional infliction of emotional distress.'"  *Hoy*, 720 A.2d at 754 (quoting

*Cox v. Keystone Carbon*, 861 F.2d 390, 395 (3d Cir. 1988)).  Indeed, "[t]he only

instances in which courts applying Pennsylvania law have found conduct

outrageous in the employment context is where an employer engaged in both

sexual harassment and other retaliatory behavior against an employee."[6] *Id.* (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1487 (3d Cir. 1990)).

"In the context of a dismissal [from employment], it has been noted that 'while loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event' and cannot provide a basis for recovery for intentional infliction of emotional distress." *Cox*, 861 F.2d at 395 (quoting *Brieck v. Harbison-Walker Refractories*, 624 F. Supp. 363, 367 (W.D. Pa. 1985), *aff'd in relevant part*, 822 F.2d 52 (3d Cir. 1987)).  Indeed, court have held that "termination from a job is a legally insufficient basis for an intentional infliction of emotional distress claim." *Sabo v. UPMC Altoona*, 386 F. Supp. 3d 530, 557 (W.D. Pa. 2019).

---

[6] Court have failed to find conduct outrageous "where an employer deceived an employee into foregoing other employment, *Cautilli v. GAF Corp.*, 531 F. Supp. 71, 74 (E.D. Pa. 1982), or even where the employer engaged in a premeditated plan to force an employee to resign by making employment conditions more difficult." *McCullough*, 2021 U.S. Dist. LEXIS 23130 at *13–14 (quoting *Cox*, 861 F.2d at 395–96 (citing *Madreperla v. Williard Co.*, 606 F. Supp. 874, 880 (E.D. Pa. 1985))).

Outside of the employment context, courts have found the following to constitute sufficiently outrageous conduct to maintain a claim for intentional infliction of emotional distress: "(1) killing the plaintiff's son with an automobile and then burying the body, rather than reporting the incident to the police; (2) intentionally fabricating documents that led to the plaintiff's arrest for murder; and (3) knowingly releasing to the press false medical records diagnosing the plaintiff with a fatal disease." *Dull v. W. Manchester Twp. Police Dep't*, 604 F. Supp. 2d 739, 756 (M.D. Pa. 2009) (citing *Hoy*, 720 A.2d at 754).  Thus, it is clear that the standard for what will constitute conduct "so extreme in nature as to go beyond all possible bounds of decency" is a high burden.

In this case, Ebert alleges intentional infliction of emotional distress based on Genpact's decision to terminate his employment after he took a survey purporting to be anonymous in which he voiced his presumably objectionable opinions about his work environment.  As a result, Ebert claims to suffer from "anxiety, tension headaches and other health problems."  (Doc. 1-2, ¶ 42.)  The court finds that this alleged conduct is not "'so extreme in nature as to go beyond all possible bounds of decency such that it would be regarded as utterly intolerable to civilized society.'"  *Regan*, 36 F. Supp. 2d at 251 (quoting *Mulgrew*, 868 F. Supp. at 103).  Indeed, courts have failed to find conduct outrageous "where an employer deceived an employee into foregoing other employment, *Cautilli*, 531 F. Supp. at 74, or even where the employer engaged in a premeditated plan to force an employee to resign by making employment conditions more difficult." *McCullough*, 2021 U.S. Dist. LEXIS 23130 at *13–14 (quoting *Cox*, 861 F.2d at 395–96 (citing *Madreperla*, 606 F. Supp. at 880)).

While the court has no doubt that Ebert was distressed at having lost his employment as a result of his responses to a work-related survey that he believed to be anonymous, the loss of employment "'is a common event' and cannot provide a basis for recovery for intentional infliction of emotional distress." *Cox*, 861 F.2d at 395 (quoting *Brieck*, 624 F. Supp. at 367); *see also Sabo*, 386 F. Supp. 3d at 557 ("termination from a job is a legally insufficient basis for an intentional

infliction of emotional distress claim"). Therefore, the court will grant the motion to dismiss on these additional grounds without prejudice to Ebert filing an amended complaint.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, Doc. 8, will be granted without prejudice to Plaintiff filing an amended complaint. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: March 31, 2022